IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

EDWARD TEITEL, M.D., J.D., )
)
   Plaintiff, )
)
v. ) Case No. 2:17-cv-00017-KOB
)
)
CAPELL HOWARD, P.C., et al. )
)
   Defendants. )

## MEMORANDUM OPINION

Attorney Edward Teitel, a *pro se* plaintiff, sued Defendants Capell & Howard, P.C.; C. Clay Torbert; Cynthia Holland-Torbert; Barbara Wells; and former U.S. District Judge Mark Fuller, alleging they fraudulently conspired against him to "effect a wrongful award" in an ERISA case filed against Teitel in September 2001. This matter comes before the court on Defendants Torbert and Capell & Howard's motion to dismiss (doc. 5), and Defendants Wells, Holland-Torbert, and Judge Fuller's motion to dismiss (doc. 11). Because this suit names former District Judge Fuller and members of the court staff, all judges in the Middle District of Alabama were recused and the case was assigned to this court. For the reasons discussed in this Memorandum Opinion, the court will GRANT both motions.

I.    **BACKGROUND**

On September 17, 2001, one of Teitel's former employees filed suit against him in the U.S. District Court for the Middle District of Alabama. The claims included failure to provide certain information about plans established pursuant to the Employee Retirement Income Security Act, failure to provide certain benefits from ERISA plans, and bad faith. *See Cromer-Tyler v. Teitel,* No. 1:01-cv-1077-MEF, 2006 WL 2355415 (M.D. Ala. Aug. 14, 2006). United

1

States District Judge Mark Fuller presided over the case. The case was assigned to U.S. Magistrate Judge Susan Walker on September 17, 2001, and reassigned to Judge Fuller on March 25, 2003. C. Clay Torbert, a named defendant here, was of counsel at Capell & Howard and represented the plaintiff in the ERISA case against Teitel.

On October 15, 2001, Teitel filed a motion to dismiss the ERISA case for failure to state a claim upon which relief can be granted, but the motion remained on the court's docket for approximately 16 months without any activity. On February 28, 2003, Magistrate Judge Walker issued an order giving the employee two weeks to respond to Teitel's motion to dismiss. The order allowed Teitel to reply to any response on or before March 26, 2003. (Doc. 6, Case 1:01-cv-01077-MEF). Teitel retained counsel on March 7, 2003; the case was reassigned to Judge Fuller on March 25, 2003; and Teitel's attorney filed his reply on April 23, 2003.[1] The employee then filed a motion to strike Teitel's reply because it was untimely and made new arguments for dismissal not found in the motion to dismiss. Judge Fuller granted the motion, sruck Teitel's reply, and then denied Teitel's motion to dismiss.

Teitel's case proceeded to the summary judgment phase, where Judge Fuller remanded the case to the administrator of the "Edward R. Teitel, M.D., P.C. Money Purchase Pension Plan" to allow the employee to exhaust her remedies under the plan by appealing the denial of her claim. (Doc. 61 at 11, Case 1:01-cv-01077-MEF). Judge Fuller also permitted the employee to reopen the case and challenge the administrator's determination should she find it necessary to do so.

---

[1] Teitel states in his Complaint that his reply was filed "a mere 3 days" late. (Doc. 1 at 5). However, a review of the CM/ECF docket sheet shows that Teitel filed his reply on April 23, 2003. *See* (Case No. 1:01-cv-01077-MEF, doc. 14).

On remand to the plan administrator, Teitel "granted" the employee's request for benefits. (Doc. 1 at 5). Then the employee reopened the case before Judge Fuller to pursue statutory penalties and attorney's fees. Teitel's suit culminated in a bench trial before Judge Fuller, in which he awarded the employee over $240,000 in statutory penalties, attorney's fees, and costs.[2]

After the district court entered judgment against Teitel, he apparently avoided payment of the judgment until July 2009. In his complaint, Teitel states Torbert and Capell & Howard "continued to pursue the judgment in Texas," where they "retained local counsel . . . and directed an effort to perfect and enforce the judgment," eventually resulting "in enough pressure on [Teitel] that he ultimately agreed to pay the judgments." (Doc. 1 at 6). Teitel completed the payment schedule, "which had been required by the fraudulently obtained settlement," in 2013. (Doc. 1 at 6).

Sometime around October 2014, Teitel became curious when he saw a news article about Judge Fuller's arrest for domestic violence in August 2014. Teitel conducted an internet investigation and found information "that implicated Defendants in a serious conflict of interest which was present during the pendency of the ERISA case" before Judge Fuller. (Doc. 1 at 7). He discovered reports implicating Judge Fuller in a number of "'unfair' results, resulting from conflicts of interest." (*Id.*) Based on the media criticism, Teitel alleges Judge Fuller's conduct left him "vulnerable to undue influence by anyone who knew of his shenanigans." (*Id.*). Yet aside from "inferences in the media that Fuller might be susceptible to extortion or coercion to

---

[2] The Eleventh Circuit affirmed the judgment following the bench trial and the award of attorney's fees, reversed the district court's dismissal of one of plaintiff's unsuccessful claims, and remanded the case to the district court. *See Cromer-Tyler v. Teitel*, 294 Fed. Appx. 504, 508-09 (11th Cir. 2008).

3

keep 'the open secrets' secret at the office" (*id.*), Teitel provides no facts or information regarding how these internet search results or Judge Fuller's alleged vulnerability relate to this case.

Teitel also discovered that Defendant Barbara Wells had joined Torbert's firm, Capell & Howard, in 1996 and became a shareholder in 2001—the same year the ERISA case was filed against Teitel. Teitel states that given her practice focus, it is likely that she had "actual knowledge of the case," "may have worked on it at the office, been consulted at the office, done research relative to the case, or, at least, knew of the case from firm meetings." (Doc. 1 at 8). Then Wells became Judge Fuller's career law clerk in December 2002, just three months before the magistrate judge allowed the employee in the ERISA suit to file a late response to Teitel's motion to dismiss.

Teitel also discovered that Defendant Cynthia Holland-Torbert is Defendant Torbert's wife. She was a staff attorney at the Middle District of Alabama while her husband was representing the plaintiff in Teitel's ERISA case. Teitel does not provide any facts showing that Wells or Holland-Torbert actually worked on or otherwise influenced his ERISA case during their time at the Middle District. Rather, Torbert simply states that, "on information and belief, Defendant Torbert used these connections to obtain an unfairly one-sided victory in favor of his client, avoiding claims of malpractice and brining financial reward to all Defendants." (Doc. 1 at 10–11).

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Federal Rules of Civil Procedure require the complaint to provide "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(1). A plaintiff

4

must provide the grounds of her entitlement, but Rule 8 rarely requires detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than a formulaic recitation of the elements of a cause of action do not meet Rule 8 standards. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

5

So, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

## III.  DISCUSSION

### A.  Claims Against the Federal Defendants

The doctrine of judicial immunity "is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity extends to judicial law clerks and staff attorneys when they are acting within the scope of their authority. *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) ("Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties have an integral relationship with the judicial process.") (internal quotation omitted). Also, a plaintiff cannot overcome judicial immunity by alleging the defendant acted maliciously or in bad faith. *Mireles*, 502 U.S. at 11.

But, judicial immunity does not bar claims against a judge when a judge acts outside his judicial capacity, or when he acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 349 (1978). Teitel concedes that Defendants Fuller, Wells, and Hammond-Torbert were acting in their judicial capacity when they allegedly conspired to influence the outcome of his ERISA case. (Doc. 13 at 9). He claims, rather, that the federal defendants are not entitled to judicial immunity because Judge Fuller acted in the clear absence of jurisdiction.

To determine whether a judge acted in the absence of jurisdiction—and is therefore not protected by judicial immunity—the court asks "whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump*, 435 U.S. at 356. In *Dykes v. Hosemann*, 776 F.2d 942, 943 (11th Cir. 1985), the Eleventh Circuit clarified that the correct interpretation of the Supreme Court's statement of the rule means "a judge enjoys absolute immunity where he or she had subject matter jurisdiction over the matter forming the basis for such liability." So, to overcome judicial immunity on these grounds, Teitel must plead sufficient facts for the court to reasonably infer that Judge Fuller lacked subject matter jurisdiction over his ERISA case.

Teitel's sole basis for arguing that Judge Fuller acted in the absence of jurisdiction is that 28 U.S.C. § 455 stripped him of what was otherwise proper subject matter jurisdiction. The statute states that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Teitel contends that "from the moment § 455 applies to a judge, he does not have jurisdiction over the case." Thus, according to Teitel, the purported conflict of interest between the Defendants created a reasonable question of Judge Fuller's impartiality, which triggered § 455 and stripped him of jurisdiction over the ERISA case.

Teitel's proposition of law fails for two reasons. First, the Eleventh Circuit has clearly established that when conflicts of interest arise between a judicial law clerk and an attorney, law firm, or party, "it is the clerk, not the judge, who must be disqualified." *Hunt v. American Bank & Trust Co. of Baton Rouge, La.*, 783 F.2d 1011, 1015-16 (11th Cir 1986). Teitel does not allege Judge Fuller had a conflict of interest with any of the defendants. Rather, the conflicts, if any, existed between Defendants Torbert, Wells, and Hammond-Torbert. So, even if the court were to

7

find that § 455 deprives a judge of jurisdiction—which it does not—Teitel has not pleaded sufficient facts for the court to find that § 455 required Judge Fuller to recuse himself from the case. If Judge Fuller knew of the conflict of interest between Torbert, Wells, and Hammond-Torbert, he would simply need to screen off Wells and Hammond-Torbert from the case.[3]

Second, § 455 makes no mention that its application deprives the court of subject matter jurisdiction, and Teitel provides no legal authority to support his theory that it does. The Supreme Court has made clear that a statute does not limit the jurisdictional authority of the district courts unless Congress clearly indicates its intention to do so. *See Henderson ex rel. Henderson v. Shineski*, 562 U.S. 428, 435–36 (2011). Thus, even if § 455 were applicable and required Judge Fuller's recusal, the court could not say that Judge Fuller acted in the absence of jurisdiction.

Even if the court somehow determined that Teitel had asserted enough facts to show that Judge Fuller had committed an ethical violation, Teitel still would not have a plausible cause of action. Teitel's argument by which he seeks to overcome the doctrine of judicial immunity is premised on an erroneous proposition of law. Thus, the immunity doctrine applies, and his claims against Defendants Fuller, Wells, and Hammond-Torbert are due to be dismissed for failure to state a claim upon which relief can be granted.[4]

**B.     Claims against Attorney Torbert and Capell & Howard**

Teitel's claims against Defendants Torbert and Capell & Howard include abuse of process, negligence, gross negligence, negligent misrepresentation, and fraudulent

---

[3] To the extent Teitel's Complaint alleges that Defendants conspired to manipulate or extort Judge Fuller, and Judge Fuller's knowledge of that misconduct triggered § 455, the court finds Teitel's conspiracy theory is too speculative to allow the court to draw a reasonable inference the fraudulent activity occurred. *See infra* Part B.
[4] Teitel previously abandoned all claims against these federal defendants in their official capacities, recognizing the claims are barred by the Eleventh Amendment. (Doc. 13 at 8).

misrepresentation.[5] Teitel asserts Capell & Howard is liable for the actions of Defendants Torbert and Wells under the doctrine of respondeat superior. Torbert and Capell & Howard argue the court should dismiss all the claims pursuant to Fed. R. Civ. P. 12(b)(6) because Teitel's Complaint fails to plead facts plausibly showing a viable cause of action against them.

To begin, the crux of Teitel's claims against Torbert and Capell & Howard is that a conflict of interest existed among the Defendants; Torbert's wife was a staff attorney in the same judicial district as Judge Fuller, and Torbert's former partner at Capell & Howard was Judge Fuller's judicial law clerk. Teitel claims Torbert intentionally hid this conflict from him, and somehow used it to influence the outcome of Teitel's ERISA case for Torbert's and Capell & Howard's own personal gain.

Teitel appears to allege that Torbert's professional and personal relationships with Wells and Holland-Torbert, along with Judge Fuller's alleged vulnerability, provided him the opportunity to extort a favorable decision out of Judge Fuller in Teitel's ERISA suit. However, Teitel provides nothing more than the Defendants' positions and places of employment during the pendency of his ERISA case to suggest a conflict of interest existed. He provides no facts tending to show that Wells or Holland-Torbert actually worked on his ERISA case; nor does he produce any facts showing a conflict existed among the Defendants for any other reason. Without more, the court is left with merely Teitel's hunch about such a conflict.

Further, even if the court assumed a conflict of interest did exist among Defendants, Teitel provides no factual basis for how the alleged conflict affected his case. He points to the magistrate judge's "inexplicable" *sua sponte* allowance for the plaintiff to untimely respond to

---

[5] In his Response to Torbert and Capell & Howard's Motion to Dismiss, Teitel clarified that he did not intend to include Torbert and Capell & Howard as defendants on his *Bivens* action claim in his Complaint. (Doc. 14 at 15).

9

his motion to dismiss, and Judge Fuller's striking of his own untimely reply brief as major indicators of the Defendants' fraudulent behavior. But aside from these allegations, and the adverse ruling he received (which the Eleventh Circuit affirmed), Teitel provides no factual basis for *how* the Defendants' alleged conflict of interest influenced the outcome of his case. Instead of factual assertions, Teitel provides only speculation and a vague conspiracy theory.

Teitel has not pleaded sufficient facts to allow the court to draw the reasonable inference that a conflict existed among the Defendants during the pendency of his ERISA case, or that the conflict actually affected its outcome. But, as shown below, even if the court assumes that a conflict of interest did exist among the Defendants, each of Teitel's claims against Torbert and Capell & Howard are due to be dismissed for failure to state a claim upon which relief can be granted because they consist of vague or conclusory allegations and misstatements of law.

1. Abuse of Process

Teitel claims Torbert and Capell & Howard should be held liable for abuse of process because they "had an ulterior purpose in failing to disclose" a conflict of interest, and conspired to use the court process to damage Teitel by influencing the outcome of the ERISA case— culminating in a "wrongfully punitive result." (Doc. 1 at 18). Teitel states that these Defendants knew of the conflict of interest and leveraged their influence to "press[] the court for relief to which their client was not entitled," thereby obtaining "wrongful relief by the participation in the conspiracy." (Doc. 1 at 18). Teitel claims the conduct was "outside the boundaries of legitimate procedure and perverted the process to obtain an illegal, improper and perverted result that was not intended by law to be effected." (Doc. 1 at 18).

The tort of abuse of process addresses the "wrongful use of process after it has been issued." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998). "It is the malicious

perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured." *Duncan v. Kent*, 370 So. 2d 288, 290 (Ala. 1979). To succeed on an abuse of process claim under Alabama law, the claimant must show (1) the existence of an ulterior purpose, (2) a wrongful use of process, and (3) malice. *Hagood*, 711 So. 2d at 950. Further, liability only attaches "if the [underlying] suit is brought, not to recover on the cause of action stated in the complaint, but for a collateral purpose." *Duncan*, 370 So. 2d at 290.

Teitel's Complaint alleges Defendants intentionally failed to disclose the existence of a conflict of interest among them to influence the outcome of the ERISA case against Teitel. However, he makes no factual allegations regarding the actual plaintiff in that case—Dr. Cromer-Tyler—nor claims she or Torbert were in any way involved with a conspiracy to file fraudulent or frivolous claims against Teitel. The plaintiff had a legitimate claim, won on that claim at trial, and then won again on appeal.

The only "malicious" motivation Teitel asserts is Defendants' financial and reputational gain. But alleging that an attorney is motivated by earning money is insufficient to show Torbert aided his client to pursue a "collateral purpose." Certainly a lawyer's goals of earning a profit and furthering his or her reputation are not the type of "collateral purpose" that gives rise to liability. Otherwise, every attorney who takes a case as part of earning a living would be liable for abuse of process. Teitel does not provide enough facts for the court to reasonably infer that the ERISA suit was not "confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Duncan*, 370 So. 2d at 290.

Teitel relies upon "threadbare recitals . . . supported by mere conclusory statements" to support his abuse of process claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Teitel

has not provided enough facts to allow the court to draw the reasonable inference that Torbert and Capell & Howard are liable for abuse of process, the claim is due to be dismissed.

2. Claims based on Torbert's Failure to Disclose the Conflict of Interest

Teitel's negligence, gross negligence, negligent misrepresentation, and fraudulent misrepresentation claims all are premised on Teitel's assertion that Torbert had a duty to disclose the conflict of interest between himself and Defendants Wells and Holland-Torbert during the litigation of his ERISA case. Teitel states: "All Defendants owed a duty to [Teitel] to act according to the rules of fair play in the judicial process," and they breached that duty by failing to disclose the conflict of interest to him "and/or" the court. However, as explained below, although Torbert owed an ethical duty to disclose any conflict of interest to his client and/or the court, any breach of that duty cannot be the basis for civil liability. Also, Teitel acknowledges that Torbert and Capell & Howard did not owe him any duty under the common law because no attorney-client relationship existed between them. *See Sessions v. Espy*, 854 So. 2d 515, 523 (Ala. 2002).

Teitel argues that, by failing to disclose the conflict of interest, Torbert and Capell & Howard breached their duty, both to him and to the court, of "candor and fair dealing" under Rule 8.4 of the Alabama Rules of Professional Conduct. Rule 8.4 provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation," or to "engage in conduct that is prejudicial to the administration of justice." Ala. R. Prof. C. 8.4(c)–(d).

Teitel is correct that Torbert was required to disclose any genuine conflicts of interest and to otherwise ethically perform his legal services. *See Pesaplastic v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir. 1986) ("It is axiomatic that attorneys owe a duty of candor to the

court" and "have a duty to deal honestly and fairly with opposing counsel."). But failure to abide by the Rules of Professional Conduct does not give rise to a civil cause of action. The Rules explicitly state:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.

Ala. R. Prof. C. "Scope."

Thus, contrary to Teitel's assertion, Torbert's and Capell & Howard's duty of candor and fair dealing cannot be the foundation on which Teitel establishes his claims of negligence and misrepresentation. Teitel relies on Torbert's violation of this duty for each of his negligence and misrepresentation claims against Torbert and Capell & Howard; as discussed below, they are all due to be dismissed for failure to state a claim for which relief can be granted.

a. Negligence Claims

To prevail on a negligence claim under Alabama law, Teitel must prove (1) an existing duty of care to a foreseeable plaintiff; (2) breach of that duty; (3) proximate causation; and (4) damages. *See Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994).

Teitel claims Torbert breached his duty to disclose the conflict of interest, which then led to a wrongful outcome in his ERISA case. As such, he claims Torbert should be found liable for negligence and gross negligence. But, as stated above, a lawyer's violation of Rule 8.4 cannot be the basis for bringing negligence claims under Alabama law. Because Teitel relies on Rule 8.4 as the only foundation to establish Torbert's duty and breach of duty, his negligence and gross negligence claims are due to be dismissed for failure to state a claim for which relief can be granted.

13

b. Misrepresentation Claims

To succeed on his misrepresentation claims under Alabama law, Teitel must prove "(1) a misrepresentation of material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was justifiably relied on by the plaintiff under the circumstances, and (4) which caused damage as a proximate consequence." *Ex Parte DeimlerChrysler Corp.*, 952 So. 2d 1082, 1090 (Ala. 2006).

Teitel claims that Torbert's and Capell & Howard's failure to disclose the conflict of interest and the conspiracy to wrongfully influence the court amounts to a misrepresentation of material fact under Alabama law. But neither Torbert nor Capell & Howard made *any* representation to Teitel, their adversary, regarding the alleged conflict of interest. Like his negligence-based claims, Teitel's misrepresentation claims rely on Teitel's theory that Rule 8.4 required Torbert to disclose the conflict of interest to the court. But, again, Torbert's alleged violation of Rule 8.4 cannot be the basis upon which a civil cause of action is founded. Teitel provides no other authority requiring Torbert to disclose the conflict.

Also, as previously noted, Teitel has not pleaded sufficient facts to show that Torbert's failure to disclose the alleged conflict of interest damaged Teitel in any way. Even if Torbert made a misrepresentation of material fact upon which Teitel relied, Teitel has not shown that the outcome of his ERISA case would have been any different had Torbert disclosed the conflict or if Judge Fuller had recused himself. His failure to show that his reliance was in some way detrimental to him, coupled with the fact that the Eleventh Circuit affirmed the outcome, and in fact reversed the court on an issue in which the court had ruled in Teitel's favor, precludes a plausible claim for misrepresentation.

Torbert had no legal duty to disclose any conflict of interest to Teitel that could give rise

to a civil cause of action against him. And nothing suggests the alleged misrepresentation harmed Teitel in any way. Thus, Teitel has not pleaded plausible causes of action for negligent or fraudulent misrepresentation, and both claims are due to be dismissed.

## IV. CONCLUSION

For the reasons stated above, the court will GRANT Defendants' motions to dismiss (docs. 5, 11) all of Plaintiff Teitel's claims in this action. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** this 23rd day of January, 2018.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE